**United States District Court**
**Northern District of Illinois**
**Eastern Division**

| | |
|---|---|
| ATRIUM CORPORATE CAPITAL LIMITED, one of the capital providers for Lloyd's of London Syndicate 609, the sole Lloyd's Syndicate Subscribing to Lloyd's Policy No. WGL000207-03,<br><br>      Plaintiff<br><br>v.<br><br>MOONLIGHT LOGISTICS, INC.,<br><br>      Defendant. | Case No. 1:23-cv-6680 |

## COMPLAINT

Plaintiff, Atrium Corporate Capital Limited ("Atrium"), one of the capital providers for Lloyd's of London Syndicate 609, the sole Lloyd's Syndicate subscribing to Lloyd's policy number WGL000207-03, by and through its attorneys, for its Complaint against Defendant, Moonlight Logistics, Inc., alleges as follows:

### NATURE OF THE ACTION

1. This is an insurance coverage action for declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

2. Atrium seeks a determination of the parties' rights and obligations under an insurance policy subscribed to by Atrium in its capacity as a capital provider, or "Name", to the commercial general liability insurance policy issued to Defendant, Moonlight Logistics, Inc.

("Defendant" or "Insured"), Policy No. WGL000207-03 for the period of March 31, 2022 to March 31, 2023 (the "Policy").[1]

3. A dispute exists over whether Atrium is obligated under the terms and conditions of the Policy to defend and indemnify the Insured against a lawsuit pending in the 25th Judicial District Court of Gonzales County, Texas that is numbered and styled Cause No. 28,342, *Scott Nesbitt, et. al. v. Moonlight Logistics Inc.*, (the "Underlying Lawsuit"). The Underlying Lawsuit concerns a July 6, 2022 automobile accident (the "Accident"). The operative pleadings in the Underlying Lawsuit are Plaintiffs' Second Amended Petition and Jury Demand, filed on January 3, 2023 (the "Petition")[2] and the Petition in Intervention and Original Petition as to Archer Logistics, Ltd. (the "Intervening Petition") filed on October 24, 2021.[3]

4. Atrium seeks a declaration that it does not, and never did, owe a duty to defend or indemnify the Insured against the Underlying Lawsuit under the Policy because the Policy's auto exclusion precludes coverage, and regardless, the Policy is excess to the Insured's auto liability policy. Atrium also seeks a declaration that it properly denied coverage for the Underlying Lawsuit.

**PARTIES**

5. Plaintiff Atrium is one of the capital providers, or "Names", for Lloyd's of London Syndicate 609, the sole Lloyd's syndicate subscribing to Policy number WGL000207-03 (the "Policy")[4]. Atrium maintained a 25.3% interest in Syndicate 609 for the 2022 underwriting year (the applicable year of account for purposes of the Policy), and, as a result, had the same percentage

---

[1] A true and correct copy of the Policy is attached here as Exhibit A.
[2] A true and correct copy of the Petition is attached here as Exhibit B
[3] A true and correct copy of the Intervening Petition is attached here as Exhibit C. The Petition and the Intervening Petition are referred to collectively as the "Operative Pleadings."
[4] *See* Exhibit A.

2

interest in the Policy. Atrium is a private limited company organized under the laws of the United Kingdom with its principal place of business in the United Kingdom. Therefore, Atrium is a citizen of the United Kingdom.

6. The Policy's liability limits are $1,000,000. Thus, Atrium's potential liability for this claim, which would be 25.3% of the possible coverage available, is in excess of the $75,000 requirement for diversity jurisdiction.

7. By virtue of the provisions in the Service of Suit Clause of the Policy, and by virtue of independent contracts between the other capital providers for Syndicate 609 and the managing agent responsible for managing Syndicate 609's affairs, the remaining capital providers of Syndicate 609 agreed to be bound by any judgment against Atrium by any court of competent jurisdiction in the United States.[5]

8. Defendant, Moonlight Logistics, Inc., is the named insured under the Policy and is incorporated under Illinois law and headquartered in Crest Hill, Illinois. Thus, the citizenship of the Defendant is in Illinois.

## STATEMENT OF JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201 and 1332 because there is complete diversity of citizenship between Atrium, a UK citizen, and Defendant Moonlight Logistics, Inc., an Illinois citizen, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendant is a citizen of the Northern District of Illinois, its headquarters is in Illinois, and the Policy was delivered to Defendant within the Northern District of Illinois.

---

[5] *See* Exhibit A, p. 7, Certificate, p. 58, Service of Suit Clause.

**BACKGROUND**

11. Scott Nesbitt, Rikki Taylor, and Tucker Mack (the "Underlying Plaintiffs") filed the Underlying Lawsuit in the 25th Judicial District Court of Gonzales County, Texas against the Insured on September 9, 2022. The Underlying Lawsuit has since been amended to join two other defendants: Archer Logistics, Ltd. ("Archer") and Trinity Logistics, Inc. ("Trinity").

12. The Petition alleges that, on or about July 6, 2022, the Insured's driver was operating a tractor trailer owned by Archer, but leased by the Insured, driving eastbound on Interstate 10 in Texas. Scott Nesbitt and his wife, Mona, were driving their three grandchildren in separate cars when they allegedly slowed or stopped due to upcoming traffic in a construction zone ahead. The Insured's driver allegedly drove into the construction zone, and crashed into the back of Mona Nesbitt's vehicle, killing Mona Nesbitt and her grandchild, and injuring another grandchild.

13. The Petition alleges that Trinity brokered a load to the Insured and Archer, the motor carriers for the load, the Insured did not have adequate safety management controls in place, and the Insured and Archer share ownership, management, places of business, tractors, trailers, and drivers. The Petition asserts a negligence count against the Insured and Archer for the acts or omissions of the "driver," including the driver's operation of a vehicle in a careless manner, while distracted, and at unsafe speeds. The Petition asserts that the Insured and Archer are vicariously liable for the driver's negligence. The Petition also alleges that Archer negligently entrusted the tractor to the Insured and that Trinity negligently hired the Insured and Archer. The Underlying Plaintiffs seek damages for wrongful death and for negligent infliction of emotional distress.

14. On October 24, 2022, Amanda and Brandon Larson, individually and on behalf of their children involved in the Accident (collectively, "Intervenors"), filed the Intervening Petition

against the Insured and Archer in the Underlying Lawsuit. Intervenors allege that the Insured's employee operated the tractor-trailer that caused the Accident and that the Texas Department of Public Safety's investigation concluded that the tractor-trailer was owned by the Insured. However, Intervenors also allege that the Insured and Archer share common ownership, vehicles, equipment, and drivers. As such, Intervenors allege that the tractor-trailer involved in the Accident was either co-owned or co-operated jointly by the Insured and Archer and that Archer also had the right to control the Insured's driver involved in the Accident.

15. The Intervening Petition asserts negligence and gross negligence counts against the Insured and Archer for the driver's operation of the tractor-trailer and that the Insured and Archer are vicariously liable for the driver's acts or omissions. It also asserts negligent entrustment and supervision count against the Insured and Archer for allowing the driver to operate the tractor trailer without adequate training and instruction. Intervenors allege that the Insured and Archer were negligent *per se* by violating certain Federal Motor Carrier Safety Regulations that caused the Accident to occur. Intervenors seek damages for wrongful death, personal injury, and for negligent infliction of emotional distress, and exemplary damages for the Insured and Archer's gross negligence.

## THE POLICY

16. The Policy's Commercial General Liability form CG 00 01 04 13, Section I-Coverages, Coverage A – Bodily Injury and Property Damage Liability, provides, in relevant part, as follows:

> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any

>
> "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…
>
> \* \* \*
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period…

The Policy defines "bodily Injury" to include death resulting from bodily injury.

17. The Policy defines the word "insured" to mean "any person or organization qualifying as such under Section **II** – Who Is An Insured." Section II, Who Is An Insured, provides, in relevant part, as follows:

> 1. If you are designated in the Declarations as:
>
> \*\*\*
>
> **d**. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

Notably, the Policy's Exclusion – New Entities endorsement form CG 21 36 03 05, eliminates paragraph 3. of Section II – Who Is An Insured.

18. The Policy's Exclusion – Employees and Volunteer Workers As Insureds endorsement form CG 21 37 10 01 (the "Auto Exclusion") provides, in relevant part, as follows:

> **A.** Paragraph **2.a.** of **Section II – Who Is An Insured** does not apply.
>
> **B.** Paragraph **2. Exclusions** of **Section I. – Coverage A – Bodily Injury And Property Damage Liability** is amended as follows:
>
> 1. Paragraph **g.** is replaced by the following:
>
> This insurance does not apply to:

6

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft:

**(1)** Owned or operated by or rented or loaned to any insured; or
**(2)** Operated by any "employee" or "volunteer worker" in the course of his or her employment by the insured or while performing duties related to the conduct of the insured's business.

Use includes operation and "loading or unloading".

This exclusion applies even if the claims against the insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent,

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you, the insured, any of your "employees" or "volunteer workers" or any "employee" or "volunteer worker" of the insured.

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

Notably, the Policy defines "auto" to include a "land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment."

7

19. Finally, Section IV – Commercial General Liability Conditions, provides, in relevant part, as follows:

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

   a. **Primary Insurance**

   This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

   b. **Excess Insurance**

   **(1)** This insurance is excess over:

   **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

   ***

   iv. If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

   **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

   **(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

   **(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

8

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self-insured amounts under all that other insurance.

## THE CLAIM AND INVESTIGATION

20. On October 26, 2022, Intervenors' counsel, Brette Hart, emailed Brazos Specialty Risk ("BSR"), a broker who assisted with the procurement of the Policy, to report a claim. BSR submitted notice of the loss to Atrium and the other subscribers to the Policy on October 27, 2022. That same day, Atrium's third-party administrator, Johnson Claim Service ("JCS") opened a claim and contacted the Insured for more information regarding the claim.

21. JCS also contacted Hart to obtain additional information about the Underlying Lawsuit and the Accident. Hart provided JCS a copy of the Intervening Petition and Plaintiffs' then operative First Amended Petition filed on October 26, 2022 (the "Prior Petition").[6] Like the current Petition, the Prior Petition alleged that the Insured's driver was operating a tractor/trailer that caused the Accident. Hart also provided JCS a copy of the relevant police report for the Accident, which identifies the Insured as the "owner/lessee" of the Volvo tractor. JCS later confirmed that the Insured is being defended against the Underlying Lawsuit by its auto liability insurer, AmTrust Insurance Company ("AmTrust").

22. On March 6, 2023, JCS sent a letter to the Insured, on behalf of Atrium and the other subscribers to the Policy, disclaiming coverage for the Underlying Lawsuit under the Policy. That denial of coverage was based on the automobile exclusion recited above and discussed more fully below.

---

[6] A true and correct copy of the Prior Petition is attached here as Exhibit D.

23. The named insured under the Policy is Defendant, a corporation, rather than a partnership, joint venture, or limited liability company. As such, the Policy's definition of "insured" only extends to include the Insured's officers, directors, and stockholders under circumstances that are not present here and the only relevant "insured" is Defendant.

24. The Policy excludes coverage for "'[b]odily injury'…arising out of the ownership, maintenance, use, or entrustment to others of any 'auto' . . . [o]wned or operated by or rented or loaned to any insured; or [o]perated by any "employee" . . . in the course of his or her employment by the insured or while performing duties related to the conduct of the insured's business." The exclusion applies "even if the claims against the insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured."

25. The Policy is excess over any other insurance "[i]f the loss arises out of the maintenance or use of . . . 'autos' to the extent not subject to [the Auto Exclusion]."

26. The allegations in the Operative Pleadings, as well as in the Prior Petition, involve the ownership, maintenance, use or "entrustment to others of an "auto" that was either owned, operated by, or rented to loaned to the Insured or operated by the Insured's employee in the course of his employment by the Insured or while performing duties related to the conduct of the Insured's business. There are no meaningful differences between the Prior Petition and the Petition for purposes of determining whether Atrium owes a duty to defend the Underlying Lawsuit. Therefore, the Underlying Lawsuit was not and is not covered under the Policy due to the Auto Exclusion, and Atrium and the other subscribers to the Policy properly disclaimed coverage for the Insured's claim.

27. Even if the Auto Exclusion does not apply, Atrium and the other subscribers to the Policy properly disclaimed any duty to defend the Insured against the Underlying Lawsuit. The

Accident arose out of the maintenance or use of an "auto," thereby making the Policy excess over the Insured's auto liability policy with AmTrust that is currently defending the Insured against the Underlying Lawsuit.

28. Atrium, on its own behalf and <u>not</u> on behalf of any other individual or entity, seeks a determination in this action that it properly declined coverage for the Insured's claim arising out of Underlying Lawsuit.

## COUNT I
## DECLARATORY JUDGMENT

29. Plaintiff incorporates the foregoing paragraphs in this Count I as if fully set out herein.

30. Plaintiff subscribed to the Policy issued to the Insured.

31. The only defendant in the Underlying Lawsuit that qualifies as an "insured" under the Policy is the Defendant in this action. Archer and Trinity are not "executive officers," directors, or stockholders of the Insured, and regardless, Archer and Trinity were not sued in this capacity in the Underlying Lawsuit.

32. The Policy excludes coverage for "bodily injury" arising out of the "ownership, maintenance, use, or entrustment to others of any 'auto' . . . [o]wned or operated by or rented or loaned to any insured; or [o]perated by any "employee" . . . in the course of his or her employment by the insured or while performing duties related to the conduct of the insured's business." The exclusion applies "even if the claims against the insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured."

33. The Policy defines "auto" as a "land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment."

34. The Operative Pleadings seek, and the Prior Petition sought, damages for "bodily injury" arising out of the ownership, maintenance, use, or entrustment to others of an "auto," that the Insured owned, operated, rented or borrowed or its employee operated in the course of his employment or while performing duties related to the Insured's business. The Operative Pleadings also assert negligent supervision, hiring, employment, training or monitoring of others by the Insured based on the same Accident.

35. The Underlying Lawsuit does not make, and has not made, any other allegations that would require Atrium to provide coverage under the Policy.

36. Therefore, the Policy's Auto Exclusion applies to preclude coverage for Underlying Lawsuit and Atrium properly disclaimed coverage for the Underlying Lawsuit.

37. Regardless, even if the Auto Exclusion does not apply, Atrium properly disclaimed any duty to defend the Insured against the Underlying Lawsuit because the Accident arose out of the maintenance or use of an "auto," thereby making the Policy excess over the Insured's auto liability policy with AmTrust.

38. Atrium does not owe, and has never owed, any duty to defend or indemnify the Insured against the Underlying Lawsuit.

**WHEREFORE,** Plaintiff requests that this Court enter a judgment in its favor and against Defendant and declare Plaintiff's denial of coverage for the damage to the Insured Property is in accordance with the Policy and applicable law and requests recovery of costs, attorney's fees, where permitted, and any other relief to which it may be entitled.

Dated: August 31, 2023       Respectfully submitted,

                 By: */s/ David E. Walker*
                 David E. Walker
                 Matthew W. Casey
                 Caitlin McAuliffe
                 Walker Wilcox Matousek LLP
                 One North Franklin Street, Suite 3200
                 Chicago, Illinois 60606
                 Tel:  312-244-6700
                 Fax:  312-244-6800
                 dwalker@walkerwilcox.com
                 mcasey@walkerwilcox.com
                 cmccauliffe@walkerwilcox.com
                 *Attorneys for Plaintiff*